May it please the court, Armin Skolnowski for Petitioner, Leader Rich William. Reserve two minutes for rebuttal, if necessary. As a threshold matter, once again, this is, in this case, the petitioner was found to be credible. This, however, is a real ID act case. In this case, substantial evidence compels the conclusion that in Indonesia, because he was ethnic Chinese. From the age of eight or nine years old, through junior high school, through the time that he left Indonesia at the age of 25, Petitioner testified credibly that he was robbed, beaten, kicked by Native Indonesians about two to three times per week during the entire time period, simply because... And I'm not sure if you have this, I'm not sure... Well, first of all, wasn't the harassment before he got to junior high? Well, he... That is true. However, he did testify, I believe it's the record, page 63. The question was asked, how often does it happen? And he said it happened two to three times a week. Can you go to that excerpt? Because I'm not sure that it was... You can fairly characterize it. It could have been more clear. That's correct. I believe it's at 61. At the bottom of the page. Yes. I was in grade school. I was always being demanded money of by the local residents. What did you do when they asked you for money? Because at the beginning, initially, I did not know, so I gave them what they asked for, and I refused to give them. How old were you when they first approached you? I was about eight or nine. Did you always give them money? When it happened the very first time, I did not give it to them, but subsequently, I always gave it to them. So what would happen if you did not give them money? I would be beaten up. Doesn't the language there suggest that he is beaten up when he doesn't give them money, but that after the first time, he gave them money each time he was approached? Well, I believe you could read it that way, Your Honor. But to go back to page 63, which is two pages later, it says, people asking for money, people taking your stuff, people beating you up, kicking you. He says, it's always happened to me in the week time, it happened to three times. Yeah, but it's kind of in the disjunctive, the question, people asking for money, people taking your stuff, people beating you up, kicking you. I mean, is it, it would have been a little bit clearer if it would have been and beating you up, kicking you instead of, we're not sure if it's or alternative or whether it's conjunctive and that all are occurring on two or three times a week. It could have, once again, I believe that could have been clarified in testimony, but he talks about it even like after graduating from school, page 64, it continued. So it looks like it wasn't just a situation that happened in school or during the school time period. And then it goes back to two or three times a week. I would put that together with up to age 25 when he left because he says even until the time I graduated it's still happening. How old were you when you left your country, 25 years old, you were 25 when you left your country, yes. So this kind of beating and harassment still occur let's say from 18 to 25, yes. That's page 64. So I mean, if you put that together, I believe that. I mean, the immigration judge seemed to focus on the fact that there was apparently no medical treatment. How important is that? The fact that he never apparently was beaten badly enough to go to a physician or a medical clinic. Correct. That's what this judge typically says in these type of cases and very similar. And what happens in these situations is that they get beaten, they get bruises, contusions, nothing breaks, so they self-treat. And in her opinion, you have to have significant injuries, which I don't think is required for if it happened one time, maybe. But this, if you take the reason that it happened from age 8 to age 25 How do you respond to the Is there record evidence that he went to a policeman apart from the stolen bike? Is there record evidence that he went to the police and complained about if he had been beaten twice a week for X number of years? Yeah, apparently it looks like they focused mainly on the bike incident with the police. There isn't the question didn't seem to have been asked whether or not he went every single time or he went Did he go any time in the record? In the record, I don't see that. That should have been asked of him, I believe during direct, but it was not. And the judge and the trial attorney didn't ask that question either if I'm not mistaken. But either way, the judge made the conclusion that police wouldn't do much anyway and they probably wouldn't have done much had it occurred in the United States. Which I assume was speculation, but that's what I think she was coming at. She was basically saying he was a young kid and things happen to young kids in school. That's, I believe, the theme of this decision. And often times what they'll say is, which it wasn't said that they there's no point to it, but he didn't say that in this matter. So were the bicycles the only time he approached the police? Apparently, yes. At least based on the record. That's what we see. However you know he did testify that the problems continued and never ended. I thought they didn't continue during high school. I thought his testimony was that it was only before junior high that he was having this more frequent problem. More frequent problems, and he didn't say that. It didn't happen necessarily. It didn't happen in the school. He always said it was outside of the school. My reading is that it always happened. I thought that two or three times a week finished at the time he went into junior high. Well, my reading would be that it happened until he left the country. Well, how about on page 63? Line 4. It lasted until I got to junior high, but it still continued on in different ways. Which he explains, when I was in junior high I received from my parents, and he talks about the bike incident. They focus on the police and that particular issue. I would say that it could have been asked better, but I believe we're stuck with this record, and it seems like he says that it happened until he left the country in the record. That leads me to believe that it happened until he left, when he was age 25. This kind of beating and harassment still occurred when, let's say, from 18 to 25, and he says, yes. And he still says two to three times a week. Again. He said it didn't happen two to three times a week, but every time that we need to go out at nighttime or go to work, they would assemble. Right. And then they'd ask why, because I'm a Chinese, ethnic, Indonesian person. Right. And then we would say that in the cumulative, which I think differs from the Halim case, where Halim, I mean, first of all, Halim was found to be not credible, which the government cites as a reason why it shouldn't be found to be past persecution, but there were only five instances in Halim, and in particular in the school only two instances. One instance where he was stripped naked by the students, and the second one he was spat on by the students. The other three incidents were, I think the police arrested him for drug possession, and then he was beaten by the mob, but the army protected him. But you're talking about, even if it was two to three times a week, let's just say, even for junior high, for a two-year period, I mean, that's a long time. Fifty-two weeks times three, I mean, that's a lot of incidents where he was so we would say in the cumulative, he was finding for past persecution. That would follow through with, yeah, sorry. Well, did he say that when he was 18 to 25 that Native Indonesians beat and harassed him when he went out at night, went to work, he was targeted because of his smaller size? He mentioned that. That was one thing he mentioned, that his particular small size. And we also mentioned in the brief that the IJ never considered... He was talking about when he was between 18 and 25  That was the last part of the testimony. The attorney asked him, is it still continuing until you're left? Yes, it did continue. Alright. Thank you. May it please the Court, Amy Carmichael for the Government. The record in this case does not compel the conclusion that Petitioner as a Chinese Indonesian suffered past persecution or has a well-founded fear of future persecution. The Petitioner has not demonstrated that even as a member of a disfavorite group, he's sufficiently distinguished from the general Chinese population such that he's eligible for asylum. The evidence of record doesn't compel the conclusion that he suffered past persecution based on the experiences that he describes. He testified to having money taken and sometimes getting beat up in elementary and middle school by other elementary and middle schoolers. And as the IJ observed, he never required medical treatment for any of these issues, which goes to the seriousness of the incidents. Yeah, but there's a whole cumulative pattern here of repeated beatings and our circuit has made it quite clear that when someone like that suffers physical attacks on more than one occasion, victimized different times over a period of years, the harm is severe enough that no reasonable fact finder could conclude that it did not rise to the level of persecution. That's Mahaloff, excuse me, that's Shand, Mahaloff and other cases. And it doesn't seem that the IJ or the BIA was applying that kind of standard. They were looking at it in isolation or breaking it down. But there's a clear pattern of, you know, for a kid in particular. Then the question is, does it continue on into his older years? And clearly there's evidence he said it did. Not as frequently. He was older, maybe things changed somewhat in that respect, but there's a whole period of time when this kid and young man were subjected to persecutive acts. I think there's a concern, though, that when he's a school child being bullied by other school children, that there's not the requisite level of state action for persecution. He states that he reported it to a teacher at his school. However, he also testified that he went to a private school, so his teacher isn't a state actor, and that the children who were bullying him didn't attend the school, so they weren't students of the teacher. He also testified that he went to, he testified on page 70 that he went to the police on only one occasion, which we know from page 63 is the time that his bike was stolen. It doesn't have to be a state actor. I mean, if he is being persecuted and he reports it to the school teacher, he goes to the police, nonetheless, the fact is that we know that ethnic Chinese are subjected to a level of persecution. That's a matter of historical fact. Yes, this court has previously recognized that they were a disfavored group, although in Halim, the court noted that they're not severely disfavored, and I think that this record is almost exclusively dealing with the 1998 riots and the country conditions in 1998, but the petitioner didn't leave Indonesia until 2006, and the only document in the record that really addresses the country conditions as they existed in 2006 is the country report on human rights practices, which devotes one paragraph to Chinese Indonesians, and says that incidents of The petitioner, again, the petitioner has to demonstrate that either it's a state actor or that it's an individual or a group that the state is unwilling or unable to control, and even though he reported it... He went to the police twice, right? He testifies on page 70 that he went to the police on one occasion. I thought he said he reported the theft of his bicycle, and... He described... He only asked where and when and didn't take any other steps, like to come to scene of the incident or seek out the perpetrator of perpetrators, and then he went to the police another time, but it turned out to be useless because the police did not take any action. He... Well... On page 70. Yes, that's on page 70. Is that referring to the same incident? It's difficult to tell from the context precisely. On page 70, he says Why didn't you try to get help from the police station or to have these people arrested? I went to the police one time, but it turned out to be useless. And he had already testified on page 63 that he went to the police about his bike incident, so it seems that that's the one time that he went to the police, and he testifies on page 63 that the police asked him information about the incident, but they didn't actually go to where his bike was taken. I was just quoting from his statement, yes. Yes. All right. Okay. But again, the... It's other school children who are committing these acts, which of course are terrible, and bullying is terrible, but that doesn't mean that the government is unable or unwilling to control the bullies. He also testified that most of his friends had... Is that what the I.J. found? The I.J. found that there was no past persecution. That's what we're talking about, no past persecution. You're saying... What are you saying? There was persecution, but they were... But he didn't report it, so it doesn't amount to persecution because... What? Well, I think it's both. The immigration judge found that... And the board found that these were... That they were not very serious... Yeah, that's what I thought we were talking about. Now you're saying, well, he didn't prove that even if it was serious that they were unwilling or unable. Is that what you're saying? Is that what the I.J. found? I think that the I.J. did make statements about that, although the primary finding was about past persecution. Right. We keep sliding over into... It's just like the last case. We slide over into, well, even if it was persecution, that's not what the focus of... It hasn't shown that there was an inability of the state to protect them. But that's not what the focus was before the agency. I appreciate you're trying to justify it, and you're doing your job in that, but we have to deal with what the record indicates the focus of the decisions were. And the focus of the decision here seems to be that it wasn't severe enough. It was repeated, but he didn't go to the hospital. He went to the police. That wasn't enough. So it appears to me that under our case law, the I.J. did not view this history through the correct legal lens. I think the other concern that the I.J. and board decision indicates is that this happened while he was in school, and he's not in school anymore. And although he does testify... But he also testified, counsel, that he continued until he left at age 25. He even said, my family was subjected to similar treatment. I think the concern, though, is that there's virtually no details about what happened after he left school. All he says is that when he would go out at night, they would gather. And we don't have any information about... He said the question was, did this kind of harassment continue? He said yes. From 18 to 25, it did. How long did he operate his own store? I believe that he opened his store in 2000 and ran it... The testimony varies a little bit. It seems like he said for a few years. In 2005 is when he went to Bali looking to open a second store. It looks like it was somewhere between 3 and 5 years that he ran a store. And his parents were relatively successful? Yes. His parents owned a store, and his aunts and uncles also owned a store. Altogether, his extended family owned 7 stores. Does the court have any other questions? No, I think we're all right. Thank you.
judges: Gwin, Pregerson, Fisher